GIBSON ET AL., APPELLEES, *v.* THE JOHN HANCOCK
MUTUAL LIFE INS. CO., APPELLANT.

(No. 416—Decided November 8, 1952.)

*Messrs. Kaylor & Kaylor,* for appellees.
*Messrs. Vorys, Sater, Seymour & Pease,* for appellant.

Guernsey, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hardin County, Ohio, in an action wherein the appellees, Margaret Gibson and Charles Gibson, were plaintiffs, and the appellant, The John Hancock Mutual Life Insurance Company, was defendant.

The plaintiffs, claiming as beneficiaries of an alleged contract of life insurance entered into between one John H. Paul, now deceased, and the defendant, The John Hancock Mutual Life Insurance Company, whereby it insured the life of said John H. Paul in the sum of $4,000 and agreed to pay double that amount, that is, double indemnity benefits, upon the maturity of the policy in case of accidental death of the insured, brought this action to recover the sum of $4,000 as indemnity for the death of said John H. Paul during the time the alleged contract of insurance was in effect and to recover a further sum of $4,000 as the additional indemnity provided in said contract in the event that said John H. Paul died as the result of an accident, the plaintiffs alleging further that the death of said John H. Paul did result from such an accident.

The cause was tried to a court and jury. During the course of the trial, the court found and determined as a matter of law that a contract of insurance was entered into between the said John H. Paul and the defendant insurance company, as claimed by plaintiffs, and that said contract of insurance was in full force and effect at the time of the death of said John H. Paul, which occurred on December 13, 1946, and that under such contract, the plaintiffs were entitled to recover the indemnity of $4,000, therein prescribed for the death of said John H. Paul, and in the event said death resulted from an accident the further sum of $4,000, as therein prescribed. The court having made this finding and determination, submitted to the jury the sole question as to whether the death of said John

H. Paul was accidental. The jury returned a verdict that said death was accidental and upon said finding and determination of the court and said verdict of the jury judgment was rendered by the court in favor of the plaintiffs and against the defendant for the amount of $8,000, with interest at 6 per cent per annum from December 13, 1946. That is the judgment from which this appeal is taken.

The defendant, appellant, assigns error in the following particulars:

1. The trial court erred in overruling the motion of the defendant for a directed verdict in favor of the defendant at the close of all the evidence.

2. The trial court erred in finding as a matter of law that John H. Paul was insured by the defendant and in rendering a judgment in favor of plaintiffs upon the finding by the jury of the sole fact that the death of John H. Paul was accidental.

3. The trial court erred in overruling the motion of the defendant for a judgment in favor of the defendant notwithstanding the verdict.

As these assignments involve essentially the same question they will be considered together.

Neither in the assignments of error nor in defendant's brief is there any contention that the verdict of the jury that the death of John H. Paul was accidental is not warranted by the pleadings and the evidence.

For a complete understanding of the questions raised by these assignments of error, it is necessary to consider the allegations in the pleadings of the parties and the evidence introduced upon the trial of said cause, hereinafter mentioned, other than the allegations and the evidence relating to the accidental death of said Paul.

Plaintiffs' amended petition and the answer thereto and the reply to such answer, upon which the cause was submitted, omitting formal parts and omitting the

second cause of action which relates solely to plaintiffs' claim for double indemnity because of the accidental death of said John H. Paul, are in the words and figures following, to wit:

"That defendant is a corporation organized and existing by virtue of the laws of the state of Massachusetts for the purpose of selling life insurance; that it was transacting such business in the state of Ohio on the 20th day of November, 1946, and on the 10th and 11th days of December, 1946, under a license issued by the state of Ohio.

"That on the 20th day of November, 1946, one John H. Paul, now deceased, made an application for a policy of life insurance on his life with the agent of defendant at Kenton, Ohio, for the amount of $4,000 preferred risk-whole life on a form provided by defendant and said application consisted of two parts, namely, part 'A' and part 'B,' and he, decedent, answered all questions contained on part 'A' asked of him by defendant's agent in accordance with the rules of such company and immediately thereafter on the 21st day of November, 1946, he was given a physical examination by a physician employed by defendant, and said physician completed part 'B' of such application and found the decedent, John H. Paul, insurable; the agent of defendant sent the application as completed above by him and the decedent, John H. Paul, to defendant company at its home office in Boston, Massachusetts, and said company found that decedent, John H. Paul, was insurable in accordance with the company rules for the amount and on the plan applied for without modification, and apprised the decedent that he was an insurable risk and that his application had been accepted, through their agent, on the 10th day of December, 1946. Said agent informed John H. Paul that his application for preferred risk-whole life insurance had been accepted by defendant and said insur-

ance would be effective immediately upon his payment of the premium in the amount of $80.32, as provided in said application. That decedent, John H. Paul paid to the agent of said company the amount of $80.32 and said agent remitted said money to defendant; that defendant accepted said money as the premium for the insurance applied for and the insurance became effective.

"Plaintiffs further state that they were named as beneficiaries in the application for the insurance above described and the insured, John H. Paul, died on the 13th day of December, 1946, as a result of injuries received in an accident in Logan county, Ohio and said insurance matured on said date and the amount due thereunder became due and payable. Plaintiffs further state that said company was notified of the date and cause of death of this insured and refuses to pay the amount due under said contract of insurance and there is due them from defendant the sum of $4,000 with interest from the 13th day of December, 1946.

"Wherefore, plaintiffs pray that they may have judgment against defendant for the amount of $8,000 with interest from the 13th day of December, 1946, and their costs herein expended."

The answer of defendant to plaintiffs' amended petition, omitting formal parts, the allegations of the defense to plaintiffs' second cause of action and the exhibits to said answer, is as follows, to wit:

"Now comes defendant, John Hancock Mutual Life Insurance Company, and for answer to plaintiffs' amended petition, admits that it is a corporation organized and existing under the laws of the state of Massachusetts as a life insurance company; that defendant was admitted to and qualified to transact the business of life insurance in the state of Ohio at the times mentioned in plaintiffs' amended petition.

"Defendant admits and avers that on the 20th day

of November, 1946, John H. Paul, now deceased, signed and delivered to a soliciting agent of defendant part A of an application to defendant for insurance on his life, a true copy of which application is attached hereto marked exhibit A and made a part hereof as if fully written herein.

"Defendant admits and avers that thereafter, on the 21st day of November, 1946, said John H. Paul was examined by a physician and John H. Paul signed part B of said application. A true copy of part B of said application is attached hereto marked exhibit B and is made a part hereof as if fully written herein. Part A and part B of said application were forwarded to the home office of the defendant in Boston, Massachusetts. Defendant says that John H. Paul did not make any payment of the premium on the policy applied for when the application, part A, was signed by John H. Paul on November 20, 1946, or when the application, part B, was signed by John H. Paul on November 21, 1946. Defendant admits that on December 10, 1946, John H. Paul drew a check payable to the order of John Hancock Mutual Life Insurance Company on the Kenton National Bank of Kenton, Ohio, in the amount of $200.80 and delivered said check to said soliciting agent. Said check was deposited by the agent of defendant in the account of defendant in Columbus, Ohio. Said check was not paid by the Kenton National Bank of Kenton, Ohio, but was returned to the Columbus agent of defendant marked 'maker deceased.' Defendant denies that defendant ever issued any policy pursuant to the application aforesaid made to it by John H. Paul. Defendant admits that John H. Paul died on December 13, 1946.

"Further answering, defendant denies each and every allegation contained in plaintiffs' amended petition which is not hereinbefore expressly admitted to be true."

The reply of the plaintiffs to the answer of defendant, omitting formal parts, is as follows, to wit:

"Come now the plaintiffs, Margaret Gibson, and Charles Gibson, a minor, by his next friend, Margaret Gibson, and for their reply admit all allegations and averments in the answer which are admissions of allegations and averments of the petition, and further replying, say that the checking account maintained by John H. Paul with the Kenton National Bank, Kenton, Ohio, on the 10th day of December 1946, had an unincumbered balance of an amount in excess of the check of $200.80 drawn by him on the 10th day of December, 1946, payable to the order of The John Hancock Mutual Life Insurance Company which said check is mentioned in its answer and further replying, say that the administrator of the estate of John H. Paul and the administrator, *de bonis non*, of the estate of John H. Paul, had, at all times, an amount sufficient to pay said check and said fiduciaries would have allowed said check as a claim against the estate if defendant had presented it and further replying, say that when the estate of John H. Paul was closed a distribution was made to his heirs at law.

"Plaintiffs further replying say that on or about the 10th day of December, 1946 the soliciting agent of defendant informed the decedent, John H. Paul, that his application for insurance was accepted and a policy therefor was issued and upon this information the decedent executed and delivered the check of $200.80 in full payment of the premium for the insurance described in the petition and the said soliciting agent accepted said money in full payment thereof and issued a receipt therefor.

"And further replying, plaintiffs deny each and every, all and singular, those allegations and averments which are not admissions of the averments of the petition."

It will be noted that the plaintiffs in their pleadings make no claim that a policy of insurance was issued, and base their right of recovery, if any, upon the written application for insurance executed by said John H. Paul under date of November 20, 1946, and completed by written report of medical examination on November 21, 1946, and, thereafter, sent by the soliciting agent of defendant insurance company, William Resch of Kenton, Ohio, through its general agent in Columbus, Ohio, Ralph W. Hoyer, to its home office in Boston, Massachusetts; the alleged finding of the defendant company that John H. Paul "was insurable in accordance with the company rules for the amount and on the plan applied for without modification"; the alleged apprisal of the said Paul on December 10, 1946, through defendant's agent that he was insurable, that his application had been accepted and that said insurance would be effective immediately upon his payment of the premium of $80.32 "as provided in said application"; the alleged payment by Paul of the premium to defendant; the alleged acceptance of such money as the premium for the insurance applied for; and the legal conclusion that the insurance thereby became effective.

On part A of the written application for insurance, the following questions with the answers of said Paul thereto appear, to wit:

"10. Plan of policy as designated in rate book with amount.
Preferred-risk whole life $4000."

"11. Supplementary Provision Election:
(Check provision, if desired)
Disability Benefit ( )
Double Indemnity (x)
Family Income ( )
........years
(Insert 10, 15 or 20)."

"12. Insurance effective:
    (check date desired)
    Date of part B               ( )
    Date of issue of policy    (x)"
"13. Premiums to be paid:
    (check method desired)
    Annually                   ( )
    Semi-annually            (x)
    Quarterly                  ( )
    Total premium        $80.32"
"14. Have you paid the premium?
              (yes or no)
                 no
    Amount paid
      $  c. o. d."

Also in part A of said application and above the signature of applicant thereto appear certain conditions, among others, as follows, to wit:

"It is understood and agreed that: A. The foregoing statements and answers, each of which I have made and read, are complete, true and correctly recorded, and with part B of this application shall form the basis for and shall be a part of the contract of insurance. B. If the first premium or instalment thereof above stated was paid when this application was signed, and if the company is satisfied that on the date of the completion of part B of this application I was insurable in accordance with the company's rules for the amount and on the plan applied for without modification, and if this application, including said part B, is, prior to my death, approved by the company at its home office, the insurance applied for shall be in force as of the date of completion of said part B, but, if this application so provides, such insurance shall be in force as of the date of issue of the policy. If payment of the said premium was not made when this application was signed, any such policy will take effect as of

its date of issue, and only if I have not consulted or been treated by a physician or other practitioner since the date of the completion of said part B, and only if the policy is delivered to and received by me and the first premium or instalment thereof is actually paid while I am alive and in sound health, and in any case, such delivery and payment shall constitute an acceptance of the policy and of all its conditions.''

The beneficiaries named in said application, being the application on which this cause is based, are Charles and Margaret Gibson.

Part B of said application entitled, ''Statements to Medical Examiner,'' was executed by Paul on November 21, 1946, and witnessed by ''Chas. H. Thompson M. D.''

Another application for life insurance, identical with the aforementioned application, except that one Marion M. Paul is named as sole beneficiary thereof, was executed by the said John H. Paul at the same time the above mentioned application was executed, and was sent, together with said application, by the soliciting agent of defendant insurance company through its general agency in Columbus, Ohio, to its home office in Boston, Massachusetts. Said applications were received at the home office of said company on November 25, 1946. The home office, following receipt of said applications, mailed a letter of the date and in the words and figures following to wit:

''Air Mail                                    December 4, 1946.
In re: John H. Paul
      Born: 11/1/1899
      Agent Resch

Mr. Ralph E. Hoyer
General Agent
Columbus, Ohio

Dear Sir:

We have ordered from this office a retail credit report which should have been ordered by the agency in view of the plan, preferred risk.

The applicant has requested two policies on that plan in the amount of $4,000 each. The minimum issued in one policy on the preferred risk basis is $5,000.

Please advise if we should consider for one policy in the amount of $8,000 with the following beneficiary, Marion M. Paul, one half of the amount payable, Charles Gibson, one fourth of the amount payable, one fourth of the amount payable Margaret Gibson.

Yours truly,<br>Frank J. Keefe, Manager''

Upon receipt of this letter, the Ralph W. Hoyer Agency at Columbus, Ohio, advised William Resch, the soliciting agent at Kenton, Ohio, by telephone on or about December 7, 1946, ''that the home office couldn't issue two four thousand dollar policies and wanted to know whether or not Mr. Paul would consider an eight or two five's and at that time, I [Resch] told Bill [Hoyer] to ask for one policy of eight thousand,'' and on said date Hoyer sent a letter to the home office of defendant insurance company, which letter is in the words and figures following, to wit:

''John Hancock Mutual Life Insurance Company<br>(For intra-company communications.)

Date December 7, 1946
Ans. letter
Subject: John H. Paul

From: The Ralph W. Hoyer Agency
      Columbus, Ohio.
To: Mr. Frank J. Keefe, Manager
      Underwriting Department

Dear Mr. Keefe:                    H. A. N.
                                   Dec 9 1946
In regard to the case of Mr. John H. Paul it is desired
that one policy in the amount of $8000 be issued with
the following beneficiary: Marion M. Paul, one-half
the amount payable, the other half payable to Charles
Gibson and Margaret Gibson, equally.
                    Sincerely,
                The Ralph W. Hoyer Agency
WBH:rfl          By: William B. Hoyer.''

Thereafter, Mr. Resch contacted John H. Paul by
telephone and on December 10, 1946, John H. Paul
came to Resch's office, at which time Resch informed
him of the request of the home office. Following this
interview and on December 10, 1946, Resch sent a let-
ter to the Hoyer Agency informing the agency of
what had transpired. This letter, received by the
company on December 11, 1946, is in the words and
figures following, to wit:

    ''John Hancock Mutual Life Insurance Company
        (For intra-company communications.)
                    Date: December 10th, 1946
                    Ans. letter
                    Subject: John H. Paul
From: Wm. F. Resch
To:   Ralph W. Hoyer

Dear Ralph:
Bill Hoyer called me last Saturday in regards to the
John H. Paul applications. I submitted this case on
two applications of $4,000 each, on the preferred risk
plan. The home office wanted to know whether they
should issue two $5,000 or one eight thousand dollar
policy. I told Bill to ask for one policy of $8,000. Mr.
Paul was in tonite [sic] to pay the premium so I ex-

plained the home office request to him and he decided to take two $5,000 policies instead of the one $8,000. Attached please find Mr. Paul's check in the amount of $200.80 representing 6 months premium on the two $5,000. Would you please wire the home office to issue two $5,000 policies instead of the one $8,000.

Thanks,<br>
Bill Resch

Received
Columbus Office
Dec 11 1946''

Before the contents of this letter were reported to the home office by the Hoyer Agency, Resch communicated by telephone with the agency and informed it that Paul had asked for $3,000 of insurance in addition to that mentioned in Resch's letter of December 10, 1946, and confirmed this telephone conversation by letter to the Hoyer Agency under date of December 11, 1946, received by the agency on December 12, 1946, which letter is in the words and figures following, to wit: ·

"John Hancock Mutual Life Insurance Company
(For intra-company communications.)

Date December 11th, 1946
Ans. letter
Subject: John H. Paul

From: William F. Resch
To: Ralph W. Hoyer

Dear Ralph:
Concerning our telephone conversation of this morning regarding the John H. Paul application. I am attaching Mr. Paul's check in the amount of $60.24 which is the six months premium on the additional $3,000 of insurance. Mr. Paul plans to be away for a week or two beginning around the 18th of December. We

would appreciate these policies being here for delivery before the 18th.

Yours very truly,     Received
Bill     Columbus Office
Dec 12 1946''

Checks drawn payable to order of defendant company were inclosed with each of said letters as indicated therein. Said checks were deposited by the Hoyer Agency in an account standing in the name of defendant company in the City National Bank and Trust Company, Columbus, Ohio. This account was designated by Mr. William B. Hoyer as a ''suspense account,'' being described by him as ''an account in the bank where money is held pending the approval of a policy and the issuance of a policy by our company. When a policy is issued, then the money is withdrawn from the suspense account and goes into the regular bookkeeping channels to route that money from Columbus to Boston.''

Also, on December 11, 1946, Hoyer sent a telegram to defendant at its home office, in the words and figures following, to wit:

''WUAD15 14 SER Columbus Ohio Dec 11 1021A Frank J Keefe, Manager Underwriting Dept The John Hancock Mutual Life Insurance Co Issue additional $5,000 preferred risk John H. Paul Application beneficiary Marion M. Paul brother Ralph W. Hoyer $5,000. 1041A.''

On receipt of Hoyer's letter of December 7, 1946, and Hoyer's telegram of December 11, 1946, above-mentioned, defendant insurance company entered the following pencilled notations on the reverse side of part B of the applications in the space provided for home office decisions.

''13,000 preferred risk
2 policies
Subject to signature.''

In conformity with the practice and custom of defendant insurance company this notation indicated that the applications, as received from the prospective insured, did not specify the amount or type of insurance which would ultimately be issued to the applicant, that such notations did not constitute a final approval of the insurance applied for or to be issued, and that as a result of such notations new application forms would be prepared by the company conforming with the amount and type of insurance to be issued, which would be delivered by the company to the soliciting agent together with the policies which they represented, and with instructions to the soliciting agent that such policies should not be delivered to the applicant until and unless the new applications were executed by the applicant.

It does not appear from the evidence that any of the things mentioned in the preceding paragraph, as customarily following such notation, either happened or were accomplished prior to the death of John H. Paul. Paul died on December 13, 1946, as a result of being hit by a Greyhound bus on that date. The verdict of the jury that his death was accidental was warranted by the evidence.

The checks executed by said Paul were forwarded through banking channels by the City National Bank & Trust Company, Columbus, Ohio, to the bank upon which they were drawn at Kenton, Ohio, but did not reach their destination until after December 17, 1946, after the death of said Paul. Said checks were returned by the drawee bank through banking channels to the depositor, marked "maker deceased," and were not paid. The depositor thereafter sent them to Kaylor & Kaylor, attorneys for the plaintiffs. No proof or proofs of claim were filed against Paul's estate on account of said checks.

During the lifetime of Paul there was at all times

sufficient money in the bank upon which said checks were drawn to the credit of Paul to pay the same, and after the death of said Paul there were at all times sufficient funds in his estate over and above all the costs of administration and indebtedness of said estate to pay the same.

The retail credit report, which the rules of defendant company required should accompany an application for "preferred risk" insurance and be approved by the company before policies of such type were issued, and which was ordered by the company, as noted in the letter to the Hoyer Agency under date of December 4, 1946, was not received by the defendant company until after the death of Paul.

Plaintiffs' claim, and the judgment rendered by the trial court from which this appeal was taken, are based upon the foregoing state of facts.

From this state of facts it will be noted that none of the premium checks given by Paul were in an amount equivalent to the premiums that would be required for preferred risk policies of $4,000, and it clearly appears that Paul, in effect, abandoned his separate applications for such policies in such amounts and substituted therefor his informal applications for two policies in the sum of $5,000 each, and later substituted therefor his informal application for two policies in the sum of $5,000 and $8,000, respectively.

It also clearly appears that the defendant company definitely refused to accept the applications for policies of less than $5,000 of the "preferred risk" type and that said Paul acquiesced in such refusal. Therefore, the plaintiffs in any event would not be entitled to maintain an action on said application for $4,000.

In fact there is nothing in the evidence tending to prove that the minds of said Paul and the defendant insurance company ever met in such a manner as to

constitute a contract of insurance by the company on the life of Paul for any amount whatsoever.

Furthermore, the hereinbefore quoted conditions of the applications for insurance are clear and unequivocal, are not against public policy, and are determinative of the rights of the parties.

Under those conditions, the policy of insurance which might be issued pursuant to the application was to be effective upon the date of the issue thereof, provided that the policy should be delivered to and received by said Paul and the first premium or instalment thereof should be actually paid during the lifetime of said Paul.

From the statement of facts it appears that the conditions which the applications provided should attend the taking effect of the policies of insurance therein applied for were never complied with and neither of the policies of insurance or insurance contracts prescribed in said applications became effective.

The execution and delivery of the checks for premiums by said Paul to the defendant company did not have the effect in any way of modifying the quoted conditions in the application as to the taking effect of the policies or contracts of insurance. In the absence of the acceptance of the applications by the defendant company and the issuance of insurance policies by it in the manner prescribed in said applications, such checks did not constitute payments of premiums on said policies or insurance contracts and did not, with said applications, constitute constructive policies or contracts of insurance and did not have the effect of making the insurance therein applied for effective without compliance with each and all of the quoted conditions of the applications.

The defendant company, by accepting said checks in the manner they were accepted, was not in any way

estopped from asserting or relying upon the quoted conditions of the applications relating to the time the insurance applied for should become effective, and pleading the same as a defense to this action.

For the reasons mentioned, each of the assignments of error is well taken, the pleadings and evidence in the cause being such that the plaintiffs have no right to recover from the defendant insurance company. Each of the assignments of error is of such a character as to require the reversal of the judgment of the trial court, and the judgment is reversed for the error of the trial court in overruling the motion of defendant for a judgment in favor of defendant notwithstanding the verdict, and this court, rendering the judgment the Common Pleas Court should have rendered, sustains said motion and renders final judgment in favor of defendant, dismissing plaintiffs' petition at plaintiffs' costs, and adjudges that the plaintiffs pay the costs of this appeal.

*Judgment reversed.*

MIDDLETON, P. J., and AHL, JJ., concur.